IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EDMOND ZAGORSKI, | ) |
| Plaintiff, | ) |
| v | ) No. |
| BILL HASLAM, in his official capacity as GOVERNOR; | ) DEATH PENALTY CASE |
| TONY PARKER, in his official capacity as COMMISSIONER; and | ) EXECUTION DATE 10/11/18 at 7:00 p.m. |
| TONY MAYS, in his official capacity as WARDEN, Riverbend Maximum Security Prison. | ) |

## COMPLAINT

1. Secrecy, evasiveness, and a rush to execute on the part of State actors have forced Edmund Zagorski to make a terrible choice: either allow the state to subject him to an execution by lethal injection where the evidence establishes the last 10-18 minutes of his life will be spent in utter terror and agony, or request to be electrocuted which will end his life by burning his organs causing his body to be mutilated and experiencing excruciating pain for (likely) 15-30 seconds. Trite literary metaphors like "Catch-22," "Hobson's Choice," or "between a rock and a hard place" are inadequate to capture the horribleness of the position that the State has placed him in.

2. Mr. Zagorski files the instant complaint asking this Court to issue a temporary restraining order and preliminary injunction directing the State of Tennessee to execute Mr. Zagorski in accordance with its newest electrocution protocol.[1]

## PARTIES

3. Plaintiff Edmond Zagorski is a condemned inmate residing at Riverbend Maximum Security Institution, Nashville, Davidson County, Tennessee.

4. Defendant Bill Haslam is the Governor of the State of Tennessee. Mr. Zagorski sues Governor Haslam in his official capacity.

5. Defendant Tony Parker is the Commissioner of the Tennessee Department of Correction. Mr. Zagorski sues Mr. Parker in his official capacity.

6. Defendant Tony Mays is the Warden of Riverbend Maximum Security Prison. Mr. Zagorski sues Mr. Mays in his official capacity.

## VENUE

7. In this action, Mr. Zagorski seeks injunctive relief pursuant to 42 United States Code § 1983.

8. Mr. Zagorski's 1983 claim arises from a federal statute. This Court therefore has jurisdiction over that claim pursuant to 28 Unites States Code § 1331.

9. Venue is proper in Tennessee's Middle District because the injury Mr. Zagorski seeks to prevent would occur in the Middle District. 28 U.S.C. §1391.

---

[1] The most recent protocol of which Zagorski is aware is dated March 13, 2017. Exhibit A to Motion for Temporary Restraining Order. However, since the protocol is not subject to the Administrative Procedures Act or any administrative rulemaking process and the State changes its protocol at will, a newer one may exist.

10. Mr. Zagorski is unaware of any State administrative remedy for requesting that the State not execute him by lethal injection.

## RELEVANT FACTS

11. On March 2, 1984, a jury found Edmund George Zagorski guilty of two counts of first degree murder. Following a brief sentencing phase, the jury found that no mitigating circumstances outweighed two aggravating circumstances and that he should be sentenced to death. Immediately thereafter, the Honorable Fred Kelly pronounced "the judgment of this Court that you shall be sentenced to death by electrocution." Trial Transcript Vol. IX, 1133-134.

12. At the time of Mr. Zagorski's crimes, trial and conviction, electrocution was the only statutory means of imposing the death penalty in Tennessee. Tenn. Code Ann. § 40-23-114.

13. In 1998, the Tennessee legislature amended the death penalty statute to permit an inmate sentenced to death by electrocution to choose to die by lethal injection. Pub. Ch. 982 (Approved May 18, 1998).

14. In 2000, the Tennessee legislature amended the death penalty statute to make death by lethal injection the default method of execution for all condemned inmates, while permitting inmates to choose to die by way of electrocution. Pub. Ch. 614 (Approved March 30, 2000).

15. As presently enacted, the death penalty statute provides:

> Any person who commits an offense prior to January 1, 1999, for which the person is sentenced to the punishment of death may elect to be executed by electrocution by signing a written waiver waiving the right to be executed by lethal injection.

Tenn. Code Ann. § 40-23-114(b).

16. The death penalty statute does not provide any specific time frame for "signing a written waiver."

17. Prior to January 8, 2018, Defendants' Lethal Injection Protocol called for the administration of one drug—pentobarbital. Tennessee courts have held that the pre-January, 2018 protocol, "if administered properly, will likely cause death with minimal pain and with quick loss of consciousness." *West v. Schofield*, 519 S.W.3d 550, 562 (Tenn. 2017).

18. On January 8, 2018, the Defendants amended their Lethal Injection Protocol, leaving pentobarbital as "Protocol A" and adding a three-drug cocktail as "Protocol B." The three-drug cocktail consists of midazolam, a sedative-hypnotic (a drug that reduces anxiety and brings about sleep), vecuronium bromide (a paralytic) and potassium chloride (a depolarizing drug that will stop the heart and cause death).

19. On February 20, 2018, Mr. Zagorski and thirty-two other plaintiffs filed suit in Davidson County Chancery Court challenging the constitutionality of the midazolam-based three-drug protocol. *Abdur'Rahman, et. al. v. Parker, et. al*, 18-183-II (Chancery Court of Davidson County February 20, 2018).

20. On March 15, 2018, the Tennessee Supreme Court sua sponte scheduled Mr. Zagorski's execution for October 11, 2018. *State v. Zagorski*, No. M1996-00110-SC-DPE-DD, (Tenn. March 15, 2018 Order setting execution date).

21. On July 5, 2018, Tennessee amended its lethal injection protocol by removing altogether Protocol A--the single dose of pentobarbital--leaving the three-drug

midazolam protocol as the only method of lethal injection in Tennessee's protocol. *Abdur'Rahman, et. al. v. Parker, et. al.*, 18-183-II (Chancery Court of Davidson County July 5, 2018 Defendant's Notice of Filing).

22. Mr. Zagorski's position in that litigation and sincerely-held personal belief—based on the science and proof developed at trial, as well as the Chancery Court's ultimate findings on July 26, 2018—is that the three-drug midazolam protocol will cause severe pain, mental anguish and needless suffering. Specifically, it is his sincere belief that if he is executed in this manner, the midazolam will be inadequate to protect him from any pain or mental anguish that will follow.

23. On July 9, 2018, after a punishingly short trial preparation period, trial began on Mr. Zagorski's constitutional challenge and lasted ten days.

24. As the trial evidence showed, an inmate in a midazolam execution will suffer first from the injection of 100 ml of pH 3.0 acidic midazolam, which will cause pulmonary edema. His lungs will begin to fill with fluid, and he will struggle to breathe.

25. As this happens, an insufficiently trained prison warden will wait for three-minutes, and then pinch his shoulder.

26. If the warden is unable to observe any signs of consciousness, the executioner will inject Mr. Zagorski with vecuronium bromide, which will paralyze his face, extremities, arms and then lungs. This will cause Mr. Zagorski extreme panic and distress, while he is hungering for air.

27. He will remain in this state, with his lungs filling with fluid (though otherwise not moving) for a couple of minutes, until a final injection of potassium chloride causes him excruciating pain, as it "ignites" every nerve fiber in his body.

28. 30-45 seconds after this pain begins, his heart will stop, and shortly thereafter he will lose consciousness and die.

29. According to the Chancellor who presided over the lethal injection trial, this "dreadful and grim" execution will take between 10 and 18 minutes. *Abdur'Rahman, et. al. v. Parker, et. al.*, 18-183-II (Chancery Court of Davidson County July 26, 2018 Order).

30. On July 26, 2018, two days after the conclusion of the trial, the Chancery Court ruled against the inmates. *Id.*

31. On July 30, 3018, Mr. Zagorski and the other inmates promptly appealed that decision. *Abdur'Rahman, et. al. v. Parker, et. al*, 18-183-II (Chancery Court of Davidson County July 30, 2018 Notice of Appeal).

32. On August 13, 2018, the Tennessee Supreme Court reached down to take jurisdiction from the Court of Appeals *sua sponte*, and set an expedited timeline for the appeals process. *Abdur'Rahman, et. al. v. Parker, et. al*, M2018-01385-SC-RDO-CV (Tenn. July 26, 2018 Order and dissenting opinion).

33. On August 30, 2018, counsel for Mr. Zagorski delivered a letter to the Warden of Riverbend Maximum Security Institution, informing him that Mr. Zagorski was unable to choose a method of execution at that time, because the litigation regarding lethal injection was still ongoing and unresolved. This letter put the Warden and

Tennessee on notice that Mr. Zagorski was considering the option of electing death by electrocution.

34. On October 3, 2018, the Tennessee Supreme Court conducted oral argument.

35. On October 8, 2018, at approximately 4:00 p.m., the Tennessee Supreme Court denied the inmates' Eighth Amendment and other constitutional challenges to the midazolam protocol.

36. The timeline set for Mr. Zagorski's challenge to Tennessee's ever-changing lethal injection protocol has been coercive. In less the seven months, the case moved from the initial complaint (February 20, 2018), to the Tennessee Supreme Court's final opinion (October 8, 2018). Along the way, the inmates filed two amendments to the complaint, secured four experts and eleven eye-witnesses, took nine depositions (ranging from Tulsa, Oklahoma to Boston, Massachusetts), conducted a ten day trial, and prosecuted a full appeal on a 15,000+ page record.

37. Within 2 hours of the Tennessee Supreme Court's decision, Mr. Zagorski delivered to the Warden of Riverbend Maximum Security Institution his election to be killed by the electric chair ("Affidavit Concerning Method of Execution").

38. Mr. Zagorski made the following statement in this election:

> By signing this affidavit I am not conceding that electrocution is constitutional. I believe that both lethal injection and electrocution violate my rights under the 8th amendment. However, if I am not granted a stay of execution by the courts, as between two unconstitutional choices I choose electrocution. I do not waive my right to continue to appeal my challenge to lethal injection. And, if that appeal is successful, then I will challenge electrocution as unconstitutional. I am signing this document because I do not currently have a stay of execution and I do not want to be subjected to the torture of the current lethal injection method.

39. On October 9, 2018, the Deputy Commissioner of the Tennessee Department of Corrections, Debra K. Inglis, informed counsel for Mr. Zagorski that due to counsel's putative failure to abide by the timing requirements of the July 5, 2018 Lethal Injection Manual for choosing a method of execution, the state will not execute Mr. Zagorski by electric chair, but, instead, his execution "will be carried out using a three-drug combination consisting of Midazolam, Vecuronium Bromide, and Potassium Chloride."

40. As a basis for denying Mr. Zagorski's statutorily permitted election of method of execution, Ms. Inglis cited (1) Tennessee Code Annotated § 40-23-114 (which, as noted, permitted this election), and (2) the July 5, 2018 Lethal Injection Manual. She presented no other legal support justifying the denial.

41. As best counsel for Mr. Zagorski can discern, the issues raised by the manual are (1) the execution team is required to receive training within two weeks of an execution (prior public records responses indicate that there have been regular trainings on the electric chair, including as recently as July 5, 2018, however, counsel for Mr. Zagorski has not received any records for the past two-weeks); and (2) the electric chair must be in the execution chamber (where it normally sits) instead of being removed (as would happen for a lethal injection execution); and (3) prison officials must test the chair within one-week of an execution (again, prior public records responses indicate that this has occurred in February of 2018, but counsel does not know if it happened in the last week).

42. On October 9, 2018, Mr. Zagorski filed a petition for writ of certiorari on the merits of his constitutional challenges to the lethal injection protocol with the United States Supreme Court.

43. On October 9, 2018, Mr. Zagorski also applied for a stay of execution with the Tennessee Supreme Court and the United States Supreme Court.

44. The Tennessee Supreme Court denied his application for a stay on October 9, 2018.

45. Mr. Zagorski does not wish to die after 10 to 18 minutes of "dreadful and grim" suffering. *Abdur'Rahman, et. al. v. Parker, et. al.*, 18-183-II (Chancery Court of Davidson County July 26, 2018 Order).

46. Electrocution is also "dreadful and grim," according to all courts that have recently examined it (and uniformly found it unconstitutional). *E.g. Dawson v. Georgia*, 554 S.W.3d 137, 142 (Ga. 2001). However, it is also relatively fast. Most recently the Supreme Court of Nebraska, in finding the electric chair unconstitutional, recognized that an inmate would probably remain conscious for 15 to 30 seconds (and possibly intermittently for minutes longer). *State v. Mata*, 745 N.W.2d 229, 278 (Neb. 2008). During this time an inmate would "suffer excruciating pain from the electrical burning" and from "electrical stimulation of sensory nerves in the [brain], skin and muscles." *Id.* at 277. Their body would burn. *Id.*

47. In late September 4, 2018 while awaiting oral argument in the Tennessee Supreme Court, Mr. Zagorski's counsel learned from documents produced in response

to his public records request that Tennessee's first lethal injection execution using the new three-drug method had not been carried out pursuant to protocol.

48. Instead, when Tennessee killed Billy Ray Irick on August 9, 2018 (1) prison officials failed to prepare the second dose of midazolam (which Tennessee believes would sedate an inmate who was otherwise found to be sensate and aware after the first dose) as required by the written protocol, *Abdur'Rahman, et. al. v. Parker, et. al*, 18-183-II (Chancery Court of Davidson County, Exhibit 2, July 5, 2018 Protocol); and (2) witnesses described unmistakable signs that Mr. Irick suffered from pulmonary edema for minutes before being paralyzed, indicating that he was almost certainty sensate and aware when injected with potassium chloride. *Abdur'Rahman, et. al. v. Parker, et. al*, M2018-01385-SC-RDO-CV (Attachments to September 6, 2018 Motion to Expand the Record).

49. Thus, the predicted 10 to 18 minutes of "dreadful and grim" death took place AND all confidence that Tennessee can competently, conscientiously, and ethically carry out a lethal injection execution pursuant to their newly enacted protocol has been lost.

50. If Mr. Zagorski cannot die via single-drug pentobarbital (which the State of Tennessee, unlike Texas and Georgia, claims to be unable to acquire), and if he must die in a "dreadful and grim" manner, he wants his death to be *quick*, dreadful and grim, instead of 10 to 18 minutes of dreadful and grim. Thus, it is his sincere preference to die by the electric chair.

51. Moreover, Mr. Zagorski trusts that the prison staff can competently flip the switch to turn on the electrical current, whereas trusting TDOC to properly mix and prepare the drugs (that will inevitably, in a best case, cause severe pain, mental anguish and needless suffering), would be naïve in light of their complete failure to do so for Mr. Irick's execution. Thus, for this reason, as well, it is his sincere preference to die by the electric chair.

52. Mr. Zagorski also recognizes that, if he must die, it would be proper to die in the manner that the jurors and judge intended.

53. At Riverbend Maximum Security Institution in Nashville, Tennessee, where Mr. Zagorski is housed, and where he is set to be executed on October 11, 2018, there is an operational electric chair. This electric chair is in the same room as the lethal injection gurney. It has been tested this year.

54. Prison personnel have been trained in how to conduct an execution using this electric chair, as recently as July 5, 2018 (if not more recently). The protocol for killing humans with this electric chair was maintained in the present, July 5, 2018 Execution Manual. Tennessee is capable of killing Mr. Zagorski in this electric chair.

## CAUSES OF ACTION

I. Violation of 14th Amendment Procedural Due Process of Law

55. Mr. Zagorski incorporates all averments made in ¶¶ 1-54, above.

56. A jury sentenced Mr. Zagorski to death by electrocution.

57. Mr. Zagorski has three state-created liberty interests that Tennessee seeks to deprive him of: (1) the right to die by electrocution; (2) the right not to die by "dreadful

and grim" lethal injection; and (3) the right to choose electrocution over lethal injection, Tenn. Code Ann. § 40-23-114(b).

58. Mr. Zagorski's state-created liberty interests are not trivialities. It would impose a significant hardship on him to be subjected to 10 to 18 minutes of a dreadful and grim execution, when a much faster method of death is statutorily available.

59. Mr. Zagorski, having the statutory right to die by electrocution, also has substantial liberty interest in not being involuntarily administered drugs that will cause death less quickly than electrocution, but which will independently cause him severe pain, mental anguish and needless suffering.

60. Mr. Zagorski is being denied his liberty interests, due to Tennessee's July 5, 2018 adoption of a revised protocol (some 34 years after his sentence, 20 years after the adoption of lethal injection as an <u>option</u>, and 18 years after the statute provided inmates the right to <u>choose</u> between electrocution and lethal injection).

61. Tennessee's July 5, 2018 Lethal Injection Manual (and all preceding manuals) did not create "rules" under the Tennessee Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-4-125 *et seq.*, ("UAPA"). *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292, 311 (Tenn. 2005). Moreover, the State can and does frequently change, alter, and amend the Lethal Injection Manual without any notice to inmates. Indeed, four days before the commencement of Mr. Zagorski's chancery court trial, the State issued the new July 5, 2018 Lethal Injection Manual without any prior notice. The Tennessee Department of Corrections could issue a new protocol the same afternoon this lawsuit is filed.

62. The issuance of a Lethal Injection Manual, containing arbitrary time-lines that are contrary to statute, cannot act to deprive Mr. Zagorski of his liberty interests.

63. Mr. Zagorski is being denied his liberty interests as a result of the collision of arbitrary procedural rules with an expedited lethal injection litigation schedule, that led to him only being provided notice on October 8, 2018 that three-drug midazolam was constitutional. Prior to October 8, 2018, he could not intelligently decide whether he would choose electrocution, as his challenge to lethal injection was ongoing.

64. Tennessee's application of arbitrary time deadlines on Mr. Zagorski, in the midst of his challenge to the constitutionality of the lethal injection protocol is arbitrary and capricious.

65. Tennessee's refusal to honor Mr. Zagorski's election to choose electrocution, made at the earliest possible moment, within **hour(s)** of the Tennessee Supreme Court upholding lethal injection is arbitrary and capricious, and clearly violative of fundamental concepts of procedural due process and ordered liberty.

66. Thus, Mr. Zagorski's rights to procedural due process, as guaranteed by the 14th Amendment to the United States Constitution would be violated, should he be denied the right to choose death by electrocution.

II. **Violation of 8th Amendment Prohibition on Cruel and Unusual Punishments.**

67. Mr. Zagorski incorporates all averments made in ¶¶ 1-54, above.

68. There is a substantial risk that Mr. Zagorski will suffer severe needless pain, mental anguish and needless suffering, if Defendants execute him using Tennessee's three-drug protocol. As the Chancery Court has already found, such an execution

will be "dreadful and grim" and last – if all goes as well as possible – for 10 to 18 minutes.

69. There is a substantial risk that, if Mr. Zagorski is executed using the three-drug protocol, he will suffer from pulmonary edema, air hunger, a sensation of being buried alive, and, last, the experience of chemical burning from inside. Midazolam, a hypnotic-sedative with a ceiling effect, is completely incapable of protecting humans from such suffering, regardless of the dose. In fact, the larger the dose, the greater the risk and severity of the pulmonary edema, which is caused by midazolam's acidic formulation. As midazolam has no analgesic properties and cannot render a human insensate, it is not used to protect normal individuals from the "pain" of a colonoscopy (where fentanyl is commonly used to provide analgesia) or a dental filling (where local anesthetics or halogenated gases protect against pain). Midaozlam is utterly incapable of protecting against the much greater pain that will be inflicted by the three-drug protocol.

70. Moreover, in light of Tennessee's recently revealed inability to follow their own protocol, the substantial risk of severe pain, mental anguish and needless suffering is increased. To the extent that a second dose of midazolam would render an inmate insensate (if the first dose did not), Tennessee's proven inability to prepare this first dose establishes the substantial risk of needless suffering.

71. There is a feasible and readily available alternative to executing Mr. Zagorski by three-drug lethal injection: he is statutorily eligible to be executed using the electric chair that is fully operational at Riverbend Maximum Security Institution.

72. Mr. Zagorski contends that, while, electrocution involves setting a human on fire, and causes excruciating pain for 30-45 seconds, such an execution would significantly reduce the risk of severe pain, mental anguish and needless suffering. Clearly, electrocution will reduce Mr. Zagorski's pain from 10 to 18 minutes to 30-45 seconds.

73. As there is a substantial risk of severe pain, mental anguish and needless suffering, and as there is a feasible and readily available alternative that would reduce this suffering, as to Mr. Zagorski, the Tennessee three-drug protocol should be found unconstitutional.

74. Mr. Zagorski would note, that this is an "as applied" challenge to the constitutionality of lethal injection in his case, and his case alone. This challenge is distinct from the broad facial challenge, which is presently pending on petition for writ of certiorari before the United States Supreme Court. This "as applied" challenge focuses on unique elements, not present in the facial challenge: (a) Mr. Zagorski has a statutory right to die by electrocution; and (b) since the facial challenge was litigated, the State of Tennessee has failed to carry out a lethal injection execution pursuant to the protocol. The inmates in the facial challenge attempted to present post-trial proof of Tennessee's failure to properly conduct the Billy Ray Irick execution, and the Tennessee Supreme Court declined to hear that proof. Thus, this is a unique claim, not previously litigated.

75. Thus, Mr. Zagorski's rights under the Eighth Amendment to the United States Constitution will be violated, should he be denied the right to choose death by electrocution.

III. Violation of *Ex Post Facto* clause

76. Mr. Zagorski incorporates all averments made in ¶¶ 1-54, above.

77. Mr. Zagorski was sentenced, pursuant to controlling Tennessee statute, to die by way of electrocution.

78. The jury and the judge that sentenced him chose that he would die rather quickly, if painfully, in the electric chair.

79. Mr. Zagorski submits that Tennessee's three-drug protocol will inflict a greater duration and severity of suffering than will death in the electric chair. That is, it inflicts a greater punishment.

80. Mr. Zagorski will be disadvantaged by being killed by lethal injection, in that his death will involve 10 to 18 minutes of suffering, instead of 15-30 seconds.

81. Mr. Zagorski's rights under the Ex Post Facto Clause of the United States Constitution, Art. I, § 9 will be violated should he be denied the right to choose death by electrocution.

IV. Violation of State Law

82. Mr. Zagorski incorporates all averments made in ¶¶ 1-54 above.

83. The Department's refusal to allow Mr. Zagorski to choose his method of execution violates Tennessee Code Annotated § 40-23-114(b), which allows an individual who commits an offense before January 1, 1999 to elect to be executed by

electrocution. Provisions in Tennessee's Lethal Injection Manual about the timing of an inmate's choice to be killed by electrocution do not vitiate his right to choose under the statute. The manual is not even promulgated under the UAPA. *Abdur'Rahman v. Bredesen*, 181 S.W.3d 292, 311 (Tenn. 2005).

## PRAYER FOR RELIEF

Mr. Zagorski, respectfully requests that this Court:

1) Enjoin the Defendants from executing Mr. Zagorski using the three-drug protocol outlined in the July 5, 2018 TDOC execution manual.

2) Order such other relief as this Court deems just.

Respectfully submitted,

OFFICE OF THE FEDERAL PUBLIC
DEFENDER FOR THE MIDDLE DISTRICT
OF TENNESSEE

KELLEY J. HENRY, BPR#21113
Supervisory Asst. Federal Public Defender
AMY D. HARWELL, BPR#18691
Asst. Chief, Capital Habeas Unit
RICHARD TENNENT, BPR# 16931
KATHERINE DIX, BPR#022778
JAY O. MARTIN, BPR#18104
810 Broadway, Suite 200
Nashville, TN 37203
Phone: (615) 736-5047
Fax: (615) 736-5265

BY: /s/ Kelley Henry
Counsel for Edmond Zagorski

## CERTIFICATE OF SERIVCE

I, Kelley J. Henry, hereby certify that a true and correct copy of the foregoing document was electronically filed and sent to the following via email on this the 6th day of September, 2018, to:

Andree Blumstein
Solicitor General

Jennifer Smith
Asst. Solicitor General
P.O. Box 20207
Nashville, TN 37202-0207

_____
Kelley J. Henry
Supervisory Asst. Federal Public Defender