IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| EDMOND ZAGORSKI, | ) | |
| Plaintiff, | ) ) ) | |
| v | ) ) ) | No. |
| BILL HASLAM, in his official capacities as GOVERNOR; | ) ) ) | DEATH PENALTY CASE |
| TONY PARKER, in his official capacities as COMMISSIONER; and | ) ) ) ) | EXECUTION DATE 10/11/18 at 7:00 p.m. |
| TONY MAYS, in his official capacities as WARDEN, Riverbend Maximum Security Prison. | ) ) ) ) | |

EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION
AND MEMORANDUM IN SUPPORT[1]

Secrecy, evasiveness, and a rush to execute on the part of State actors have forced Edmund Zagorski to make a terrible choice: either allow the state to subject him to an execution by lethal injection where the evidence establishes the last 10-18 minutes of his life will be spent in utter terror and agony, or request to be electrocuted which will end his life by burning his organs causing his body to be

---

[1] This lawsuit is being filed under emergency circumstances. Mr. Zagorski begs the Court's indulgence for any technical errors in pleading. Mr. Zagorski invokes the First, Eighth, and Fourteenth Amendments to the United States Constitution; the Ex Post Facto Clause of the United States Constitution, Art. I, § 9; Tenn. Code. Ann. § 40-23-114(b).

mutilated and experiencing excruciating pain for (likely) 15-30 seconds. Trite literary metaphors like "Catch-22," "Hobson's Choice," or "between a rock and a hard place" are inadequate to capture the horribleness of the position that the State has placed him in.

Mr. Zagorski files the instant complaint asking this Court to issue a temporary restraining order and preliminary injunction directing the State of Tennessee to execute Mr. Zagorski in accordance with its newest electrocution protocol.[2]

I. **Mr. Zagorski has an absolute right to choose electrocution.**

Mr. Zagorski was sentenced to death by electrocution. That was the verdict of the jury.[3] As society "evolved" and the Supreme Court was poised to declare death by electrocution unconstitutional,[4] the State of Tennessee made lethal injection the default method of execution. Tenn. Code Ann. § 40-23-114 (Supp. 2000). Under the 2000 version of the statute, any inmate sentenced to death prior to 1999 has the absolute right to choose death by electrocution. The statute was amended in 2014 by the Capital Punishment Enforcement Act ("CPEA") to permit the state to involuntarily execute any death-sentenced inmate by electrocution if lethal injection is declared unconstitutional or if the lethal chemicals are unavailable through no

---

[2] The most recent electrocution protocol of which Zagorski is aware is dated March 13, 2017. Exhibit A. However, since the protocol is not subject to the Uniform Administrative Procedures Act or any administrative rulemaking process and the State changes its protocol at will, a newer one may exist.

[3] Of course 6 jurors say that if they would have had the option of Life Without Parole, they would not have sentenced him to death. See Exhibit B (collective), Juror Affidavits.

[4] https://www.nytimes.com/1999/10/28/us/supreme-court-to-review-use-of-electric-chair.html (last checked October 10, 2018).

fault of the department. Tenn. Code Ann. § 40-23-114 (Supp. 2014). The Statute allows for the State to invoke the provisions of the CPEA at any time, including up until the evening of the execution. The current statute states:

> Any person who commits an offense prior to January 1, 1999, for which the person is sentenced to the punishment of death may elect to be executed by electrocution by signing a written waiver waiving the right to be executed by lethal injection.

*Id.* at 114(b). The Statute does not place a timeframe on when the written waiver needs to be completed, nor does it require a certain form of waiver.

### II. Defendants unilateral and arbitrary adoption of capricious procedures cannot take away Mr. Zagorski's right to choose his method of death.

Defendants unilaterally and arbitrarily adopted a protocol, which does not have the force and effect of an administrative rule,[5] which requires the Warden to approach the inmate 30 days before his execution and present him with a form affidavit, drafted by Defendant Parkers' in-house counsel, asking the inmate to choose a method of execution. Defendants' are fully aware that by asking the inmate to sign this affidavit they are requesting him to give up his legal right to challenge any method he chooses. Such a procedure is not provided in, nor compelled by, the Statute.

In September 2017, Defendants made a decision to adopt a new lethal injection protocol which they knew, or should have known, would cause the inmate to experience and feel 10-18 minutes of pulmonary edema, suffocation, and chemical

---

[5] *See Abdur'Rahman v. Bredesen*, 181 S.W.3d 292, 311 (Tenn. 2005). (execution protocol not subject to Uniform Administrative Procedures Act).

burning. In October, 2017, Defendant Parker purchased the drugs necessary to carry out the new protocol. Defendants kept their decision secret from the public and the inmates until January 16, 2018. At the same time, Defendants pushed for quick execution dates in order to prevent a full, fair, and complete challenge to this new, barbaric protocol.

Zagorski and 32 other death row inmates diligently challenged the new protocol with breathtaking speed. The complaint was file February 20, 2018, the ten-day trial commenced on July 9, 2018, the appeal was prosecuted between July 30, 2018 and October 8, 2018. A petition for writ of certiorari is pending in the United States Supreme Court. *Zagorski v. Parker*, No. 18-6238.[6]

Despite ongoing litigation, Defendants' lawyer approached another death row inmate, Billy Ray Irick, and asked him to sign the waiver. Defendants' lawyer in that case gave Irick's lawyer less than a day's notice of her intent to approach his client. When told that the lawyer could not attend in person because of a funeral, Defendant's lawyer informed Irick's lawyer she would put him on the phone.

III. **Mr. Zagorski has long asserted his right to choose the method of execution.**

With this knowledge, undersigned counsel sent a letter to Warden Mays and copied his lawyer and the Asst. Solicitor General on August 30, 2018.[7] The letter states, "Because the appeal in the current lawsuit has not come to a conclusion it is

---

[6] Attached as Exhibit C. An application for stay of execution is also pending. *Zagorski v. Tennessee*, No. 18A376.

[7] Exhibit D, August 30, 2018 letter to Warden Mays from Kelley Henry.

inappropriate and improper for you to approach Mr. Zagorski with the affidavit." The letter further insists that if the Warden chooses to approach Mr. Zagorski, his counsel must be physically present at all times. *Id.*

On September 7, 2018, Assistant Attorney General Scott Sutherland sent an email claiming that undersigned counsel had been advised of an intent to approach Mr. Zagorski with the Affidavit. No such communication was ever received by undersigned counsel. Nonetheless, Mr. Zagorski was not physically approached.[8] Without legal authority, Mr. Sutherland set an arbitrary deadline of September 27, 2018, for Mr. Zagorski to complete the State's affidavit. On September 27, 2018, undersigned counsel responded by email to Mr. Sutherland:

> As I stated in my August 30, 2018 letter which is attached, Mr. Zagorski is unable to sign this affidavit at this time. Both methods of execution are unconstitutional. Under the case law and statute, he cannot challenge electrocution unless lethal injection is held unconstitutional or the department gives notice of its intent to use electrocution. The choice offered by this affidavit is in reality no choice at all. It is a request to give up litigation and submit to an unconstitutional execution. This he will not do unless, and until, all of his legal rights have been finally adjudicated. That will not happen until after the Tennessee Supreme Court and, if necessary, the United States Supreme Court rules. Thus, Mr. Zagorski will not be signing the affidavit today. He reserves the right to do so after his rights have been finally adjudicated."[9]

At 3:58 p.m. on October 8, 2018, undersigned counsel received an email copy of the Tennessee Supreme Court opinion.

---

[8] Exhibit E, Email exchange with Scott Sutherland.
[9] Exhibit F, Email to Scott Sutherland from Kelley Henry.

Undersigned counsel immediately met in private with her client Mr. Zagorski. He instructed her that it was his wish that she inform the Warden that (1) if the courts denied his motions for a stay of execution in his pending litigation and (2) if the State moved forward with his execution on October 11, 2018, then, and only in that case, he would choose not to be executed under the current lethal injection protocol. Mr. Zagorski informed counsel that, if he is forced to choose between two unconstitutional protocols, then his choice is electrocution as the lesser of two evils.

At 5:28 p.m. on October 8, 2018, undersigned counsel hand-delivered Mr. Zagorski's signed affidavit to Defendant Mays' agent at the prison.[10] The affidavit states:

> By signing this affidavit I am not conceding that electrocution is constitutional. I believe that both lethal injection and electrocution violate my rights under the 8th amendment. However, if I am not granted a stay of execution by the courts, as between two unconstitutional choices I choose electrocution. I do not waive my right to continue to appeal my challenge to lethal injection. And, if that appeal is successful, then I will challenge electrocution as unconstitutional. I am signing this document because I do not currently have a stay of execution and I do not want to be subjected to the torture of the current lethal injection method.

On October 9, 2018, Defendants, by in-house counsel, emailed undersigned counsel a letter stating their refusal to honor Mr. Zagorski's statutory rights.[11] The letter cites no legitimate legal authority for refusing to honor Mr. Zagorski's rights.

---

[10] Exhibit G, Affidavit.
[11] Exhibit H, October 9, 2018 Letter from Debra Inglis.

The letter claims, in a conclusory manner, that the department cannot be prepared to use the electric chair by October 11. That representation is not credible.

## IV. Defendants can easily conduct an execution by electric chair.

The prison practices the electrocution protocol every month. The electric chair is examined by an electrician every year. The idea that the chamber requires two weeks for reconfiguration is ludicrous.[12] Unless the prison loses power, they can carry out an electrocution. It is simply one final indignity to force Mr. Zagorski to submit to 10-18 minutes of torture.

The Warden's reliance on the Tennessee Supreme Court decision in *West v. Schofield*, 468 S.W.3d 482 (Tenn. 2015), is unavailing. That decision granted the State's motion to dismiss Zagorski and other plaintiffs' legal challenge to the electric chair, but declined to hold the electric chair constitutional. Rather, at the request of the plaintiffs in that case, the Supreme Court required the *State* to provide 14-days' notice of intent to involuntarily use the electric chair, so that plaintiffs would have the opportunity to re-initiate what is a plainly meritorious lawsuit. That opinion places no obligation on the inmates or restriction of their rights under the Statute. *West*, 468 S.W.3d at 493

> Here, Defendants were on notice that Mr. Zagorski would refrain from exercising his rights under the statute until his legal rights were finally adjudicated. He still hopes that the United States Supreme Court will step in and that he will not be subject to either barbaric form of punishment. He gave Defendants notice less than two hours after the Tennessee Supreme Court's decision.

---

[12] Exhibit I, Photo of execution chamber.

V.   Mr. Zagorski is likely to succeed on the merits; executing him with 10 to 18 minutes of torture, when a feasible alternative is available, cannot be permitted.

Zagorski ought not be punished with 10 to 18 minutes of drowning and suffocation because the State unilaterally, arbitrarily and capriciously chose this unreasonable timeline.

Because Mr. Zagorski is likely to succeed on the merits, because he will be irreparably harmed if the temporary restraining order and preliminary injunction are not granted, because he has been diligent, because the State has unclean hands, and because the State will not be harmed in any way whatsoever, the Motion for Temporary Restraining Order should be granted.

## CONCLUSION

WHEREFORE, for all of these reasons, and those stated in the complaint, Mr. Zagorski prays the court will 1) conduct an emergency hearing on this motion; 2) order Defendants to produce for testimony at the hearing Defendant Warden Mays and Deputy Commissioner of Administration Debra Inglis, and 3) issue a temporary restraining order and/or preliminary injunction that Defendants are restrained against the use of their lethal injection protocol on October 11, 2018 and that if the execution is not stayed, directing Defendants to carry out Mr. Zagorski's execution by electrocution, and/or 4) any other relief that justice requires.

Respectfully submitted,

OFFICE OF THE FEDERAL PUBLIC
DEFENDER FOR THE MIDDLE DISTRICT
OF TENNESSEE

KELLEY J. HENRY, BPR#21113
Supervisory Asst. Federal Public Defender
AMY D. HARWELL, BPR#18691
Asst. Chief, Capital Habeas Unit
RICHARD TENNENT, BPR# 16931
KATHERINE DIX, BPR#022778
JAY O. MARTIN, BPR#18104
810 Broadway, Suite 200
Nashville, TN 37203
Phone: (615) 736-5047
Fax: (615) 736-5265

BY: /s/ Kelley J. Henry
Counsel for Edmond Zagorski

## CERTIFICATE OF SERVICE

I, Kelley J. Henry, hereby certify that a true and correct copy of the foregoing document was filed and served via email on this the 10th day of October, 2018, to:

Andree Blumstein
Solicitor General

Jennifer Smith
Asst. Solicitor General
P.O. Box 20207
Nashville, TN 37202-0207

/s/ Kelley J. Henry
Kelley J. Henry
Supervisory Asst. Federal Public Defender