IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| EDMOND ZAGORSKI, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:18-cv-01035 |
| | ) | |
| BILL HASLAM, in his official capacity as GOVERNOR; | ) ) | DEATH PENALTY CASE |
| | ) | |
| TONY PARKER, in his official capacity as COMMISSIONER; and, | ) ) | EXECUTION DATE 10/11/18 at 7:00 p.m. |
| | ) | |
| TONY MAYS, in his official capacity as WARDEN, Riverbend Maximum Security Prison, | ) ) ) | |
| | ) | |
|     Defendants. | ) | |

### DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff has filed a complaint accompanied by an Emergency Motion for Temporary Restraining Order and Preliminary Injunction asking the Court to direct the State of Tennessee to execute him "in accordance with its newest electrocution protocol" and to enjoin the State from carrying out his execution by lethal injection. He argues that he has an absolute right to choose execution by electrocution instead of by lethal injection. He also argues in support of his motion for a TRO that, as a matter of state law, the Defendants "unilaterally and arbitrarily adopted a protocol" that does not comply with state law. In short, Plaintiff's motion raises no cognizable federal question and his motion for restraining order should be denied because his complaint fails to state a claim upon which relief can be granted.

**Standard for Granting TRO**

Federal Rule of Civil Procedure 65 governs the Court's power to grant a temporary restraining order (TRO). In determining whether to grant a TRO a district court must consider the following four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *See, e.g., Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007). A temporary restraining order is extraordinary relief and should be granted only if the movant carries his burden of proving that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). For the reasons set forth below, Zagorski has not met his burden.

Plaintiff has no "an absolute right" under Tennessee law to choose electrocution as his method of execution. Motion, p. 2. Tennessee Code Annotated § 40-23-114(a) specifically provides, "For any person who commits an offense for which the person is sentenced to the punishment of death, the method of carrying out the sentence *shall be by lethal injection*." State law further authorizes the Department of Correction to "promulgate necessary rules and regulations to facilitate the implementation" of the statutory provisions governing execution. Tenn. Code Ann. § 40-23-114(c). The Department's authority includes the ability to establish protocols governing the conduct of executions. Death-sentenced inmates whose offense was committed before January 1, 1999, "may elect to be executed by electrocution by signing a written waiver waiving the right to be executed by lethal injection." Tenn. Code Ann. § 40-23-114(b).

But the right to elect a method of execution necessarily exists within the confines of and under the limitations of the applicable execution protocol. To conclude otherwise would lead to absurd results. Plaintiffs' contention that the Department may invoke the provisions of the Capital

Punishment Enforcement Act ("CPEA") on the evening of an execution—and presumably make a last-minute switch to electrocution—is misleading. First, as the Tennessee Supreme Court observed in *West v. Schofield,* 468 S.W.3d 482, 493 & fn.13 (Tenn. 2015), any such shift in protocol is impracticable under the Department's protocols, which call for different execution teams for lethal injection and electrocution with unique training requirements in the weeks leading up to a scheduled execution. These differences "prevent the Commissioner and TDOC from undertaking any last-minute switch from lethal injection to electrocution." *See West,* 468 S.W.3d at 493 & fn.13.

Moreover, the Tennessee Supreme Court specifically announced in *West* that, "All [future] orders [of that Court] setting new execution dates will direct the State to ensure that the death-sentenced inmates receive adequate notice, prior to their scheduled execution dates, of the method that TDOC will use to carry out their executions and of any decision by the Commissioner or TDOC to rely upon the CPEA." 468 S.W. 3d at 494.

The Plaintiff received that notice in this case by letter from the Commissioner on September 27, 2018. His the purported election—submitted just under 72 hours before the scheduled execution—is impracticable and unworkable under the Department's protocol.

Plaintiff's contention that the Department's election procedures are "arbitrary and capricious" is meritless. The Department is vested with authority to promulgate such procedures, and Plaintiff has not challenged those decisions in any state tribunal.

Moreover, none of the claims raised in Plaintiff's Complaint has any likelihood of success.

**Claim I Violation of Fourteenth Amendment Due Process and IV Violation of State Law**

Zagorski contends that Tennessee has created three liberty interests in setting out the method for execution of capital sentences in Tenn. Code Ann. §40-23-114: (1) right to die by

electrocution; (2) right not to die by "dreadful and grim" lethal injection; and (3) right to choose electrocution. He further argues that the State will violate those interests by not allowing him to choose his method of execution. While states may create, by statute or regulatory procedures, liberty interests that are protected by the Due Process Clause, those interests generally are limited to restraints on liberty that exceed an imposed sentence or that independently give rise to Due Process Protections. *Sandin v. Conner,* 515 U.S. 472, 483-84 (1995). Zagorski has not demonstrated that any of these alleged state-created rights rise to this level.

First, Zagorski acknowledges that he was sentenced to death. The method of execution, however, is not a part of the judgment. *See Hill v. McDonough*, 547 U.S. 573, 579-80 (2006); *Nelson v. Campbell*, 541 U.S. 637, 644 (2004). His second claimed state-created right is simply a restatement of his Eighth Amendment claim that is addressed in response to his free-standing Eighth Amendment claim. Finally, he argues that he was denied his state-created right to select electrocution. While the State has provided a method by which death-row inmates (sentenced before January 1, 1999) may elect to choose electrocution rather than the default method of lethal injection, Tenn. Code Ann. §40-23-114, the statute also gives the Tennessee Department of Correction the authority to promulgate rules to carry out the election. Pursuant to that protocol, the Department timely sent the method-choice form to Zagorski, but, on counsel's advice, he did not sign it. The form clearly announced that any change in the execution method must come 14 days or more before execution. Zagorski failed to comply with that mandate. His failure to avail himself of the State's process does not amount to a due process violation.

**Claim II  Violation of Eighth Amendment Cruel and Unusual Punishment**

Zagorski has litigated a challenge to Tennessee's lethal-injection protocol, which was rejected by the chancery court. The Tennessee Supreme Court affirmed that denial on October 8th.

*Rahman v. Parker*, 2018 WL 4858002, No. M2018-01385-SC-RDO-CV (Tenn. 2018). Zagorski has filed a cert petition in the United States Supreme Court challenging that rejection and has asked that Court for a stay. Accordingly, this request is not the appropriate vehicle for raising these Eighth Amendment challenges, nor is this Court the proper venue.

**Claim III Violation of Ex Post Facto Clause**

The Ex Post Facto Clause is concerned with 'lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated. *Zink v. Lombardi*, 783 F.3d 1089, 1108 (8th Cir. 2015) (citing *Weaver*, 450 U.S. at 30). The change in method of execution does not make the sentence more burdensome and so does not violate the Ex Post Facto Clause. *Johnson v. Bell*, 457 F. Supp. 2d 839, 841 (M.D. Tenn. 2006) (quoting *Poland v. Stewart*, 117 F.3d 1094, 1104-05 (9th Cir.1997)), citing *Collins v. Youngblood*, 497 U.S. 37, 52, 110 S.Ct. 2715, 2724, 111 L.Ed.2d 30 (1990). "More fundamentally, Plaintiffs present no authority for the proposition that a particular mode of lethal injection which on its face does not increase the punishment for murder can be found to operate ex post facto because of changes in the drugs used. That is, Plaintiffs cannot eventually prevail on their Ex Post Facto claim by producing increased evidence of midazolam's deleterious effects, however successful they may eventually be in an Eighth Amendment attack on the drug." *In re Ohio Execution Protocol Litigation*, No. 2:11-cv-1016, 2018 WL 1033486, at *27 (S.D. Ohio Feb. 22, 2018).

# CONCLUSION

Because Zagorski has failed to carry his burden of demonstrating that the circumstances demand such extraordinary relief, his request should be denied.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter


s/ Scott C. Sutherland
SCOTT C. SUTHERLAND
Deputy Attorney General
B.P.R. No. 29013
scott.sutherland@ag.tn.gov


s/ Rob Mitchell
ROB MITCHELL
Assistant Attorney General
B.P.R. No. 32266
Law Enforcement and
Special Prosecutions
Division
P.O. Box 20207
Nashville, Tennessee 37202-0207
Off. (615) 532-7688
Fax (615) 532-3926
robert.mitchell@ag.tn.gov

# CERTIFICATE OF SERVICE

       I hereby certify that a true and exact copy of the foregoing has been filed and served electronically to the following parties via the Court's electronic filing system on this the 10th day of October, 2018:

Kelley Henry
Amy Harwell
Richard Tennent
Katherine Dix
Jay Martin
810 Broadway, Suite 200
Nashville, TN 37203
(615) 736-5047
Kelley_henry@fd.org
*Counsel for Zagorski*

                                                        s/ Scott C. Sutherland
                                                        SCOTT C. SUTHERLAND
                                                        Deputy Attorney General