# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| EDMUND ZAGORSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:18-cv-01035 |
| ) | |
| BILL HASLAM, et al., ) | JUDGE TRAUGER |
| ) | |
| Defendants ) | |

## MEMORANDUM AND ORDER

The petitioner, whose execution is scheduled for today, October 11, 2018, at 7 p.m. has filed a Complaint alleging violations of his civil rights pursuant to 28 U.S.C § 1983, along with an Emergency Motion for Temporary Restraining Order and Preliminary Injunction. At the court's request, the defendants have filed a Response to the plaintiff's motion, and the court finds that a hearing is unnecessary to rule on the motion. The United States Court of Appeals for the Sixth Circuit has stayed the execution in related litigation, but the defendants are attempting to have the stay vacated by the United States Supreme Court. *See* Application to Vacate Stay of Execution of Death Sentence, *Zagorski v. Mays*, No. ---- (U.S. Oct. 11, 2018). This court sees no reason to delay a decision on the plaintiff's pending motion.

I. RELEVANT BACKGROUND

Tennessee Code Annotated § 40-23-114 provides in pertinent part as follows:

(a) For any person who commits an offense for which the person is sentenced to the punishment of death, the method for carrying out this sentence shall be by lethal injection.

(b) Any person who commits an offense prior to January 1, 1999, for which the person is sentenced to the punishment of death may elect to be executed by electrocution by signing a written waiver waiving the right to be executed by lethal injection.

> (c) The department of correction is authorized to promulgate necessary rules and regulations to facilitate the implementation of this section.

The plaintiff was sentenced in 1984, so he falls into the class of inmates to whom section (b) of this statute applies. In a portion of its Execution Procedures for Electrocution outlining the "Primary Role" of the Warden in overseeing executions, the Tennessee Department of Correction (TDOC) provides that one role of the Warden in the execution protocol is "[t]o ensure that condemned inmates sentenced prior to January 1, 1999, are given the opportunity to select electrocution or lethal injection as a legal means of execution at least 30 days before the execution." (Doc. No. 1-1 at 13.) The TDOC's form Affidavit Concerning Method of Execution advises inmates that, if they waive the right to lethal injection by electing electrocution, they "may rescind that waiver by contacting the Warden <u>no later than 14 days prior to the date of the execution</u> and signing a new affidavit to that effect." (Doc. No. 1-1 at 80) (Emphasis in original). The form itself does not provide any deadline for the inmate's initial election.

Thirty days before his scheduled execution date, the plaintiff, along with dozens of other Tennessee death row inmates, were awaiting oral argument in the Tennessee Supreme Court on their facial challenge to the constitutionality of Tennessee's lethal injection protocol. That protocol consists of a three-drug "cocktail" of the sedative midazolam, the paralytic vecuronium bromide, and potassium chloride to stop the inmate's heart. The state trial court's ruling on the inmates' lawsuit, which was then pending on appeal to the Tennessee Supreme Court, had found that the plaintiffs' "experts established that midazolam does not elicit strong analgesic effects and the inmate being executed may be able to feel pain from the administration of the second and third drugs." Order Dismissing With Prejudice at 21, *Abdur'Rahman v. Parker*, No. 18-183-II(III) (Davidson Chancery Jul. 26, 2018). Nevertheless, the Chancery Court rejected the

- 2 -

Case 3:18-cv-01035   Document 10   Filed 10/11/18   Page 2 of 9 PageID #: 389

plaintiffs' challenge on other grounds, including the finding that any suffering caused by midazolam's lack of strong analgesic effects would only last for 10–18 minutes. *Id.* at 25, 28.

The state trial court's conclusion that Tennessee's protocol was constitutionally acceptable, despite its finding that midazolam was insufficient to prevent the inmate from experiencing the pain of the second two drugs, was a departure from United States Supreme Court precedent, in which it has been "uncontested that, failing a proper dose of [a first drug] that would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of [the paralytic] and pain from the injection of potassium chloride." *Baze v. Rees*, 553 U.S. 35, 53 (2008). The plaintiff asserts that, because the state's ability to proceed with its midazolam-based protocol was still being litigated and in doubt on September 11, 2018, he was not in a position at that time to exercise a knowing and intelligent election between lethal injection and electrocution. In fact, counsel for the plaintiff had sent a letter to the Warden and his counsel on August 30, 2018, indicating that he could not make his election until that litigation came to a close. Through his attorney, the Warden extended the deadline for the plaintiff to make his election until September 27, 2018, on which date the state court appeal was still pending.

The Tennessee Supreme Court affirmed the trial court's ruling at approximately 4 p.m. on October 8, 2018, and the plaintiff gave notice to the Warden within two hours of his election to be executed by electrocution pursuant to § 40-23-114. TDOC counsel responded with a letter stating that "[t]he purported waiver and election are ineffective and, even if effective, would be incapable of implementation consistent with protocol at this late stage." (Doc. No. 1-8.) Accordingly, despite the plaintiff's election of electrocution as his method of execution, TDOC's present intention is that "Mr. Zagorski's execution scheduled for Thursday, October 11, 2018,

will be carried out using a three-drug combination consisting of Midazolam, Vecuronium Bromide, and Potassium Chloride." (*Id.*)

## II. TEMPORARY RESTRAINING ORDER STANDARD

The same standard generally applies to the issuance of temporary restraining orders and preliminary injunctions. *Northeast Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). The court must assess four factors to determine whether a plaintiff is entitled to a preliminary injunction: "(1) whether [a movant] has demonstrated a strong likelihood of success on the merits; (2) whether he will suffer irreparable injury in the absence of equitable relief; (3) whether the stay will cause substantial harm to others; and (4) whether the public interest is best served by granting the stay." *Cooey v. Strickland*, 589 F.3d 210, 218 (6th Cir. 2009). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.* (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).

The potential harm arising from a court's ruling on a motion to enjoin an inmate's execution weighs heavily on both sides. The irreparable injury inflicted by an execution in violation of the Constitution is too obvious to require discussion. And "it is always in the public interest to prevent violation of a party's constitutional rights." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 274 F.3d 377, 400 (6th Cir. 2001). But, on the other hand, courts must weigh the State's interest in carrying out a lawful death sentence and in the finality of criminal judgments, *Workman v. Bredesen*, 486 F.3d 896, 912–13 (6th Cir. 2007), and the fact that "the public interest is not served by ordering a stay of execution for claims that are unlikely to prevail." *Bedford v. Kasich*, No. 2:11-CV-351, 2011 WL 1691823, at *15 (S.D. Ohio May 4, 2011). That interest in finality grows weightier as an execution date

approaches, and both the Supreme Court and the Sixth Circuit have counseled against last-minute stays that interfere with the state's ability to carry out its sentences. *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004); *Bedford v. Bobby*, 645 F.3d 372, 375 (6th Cir. 2011).

Because of the strong and universal competing interests surrounding an impending execution, these cases tend to turn on the inmate's ability to establish a likelihood of success on the merits of his challenge. *Glossip*, 135 S. Ct. at 2737 ("The parties agree that this case turns on whether petitioners are able to establish a likelihood of success on the merits."); *In re Ohio Execution Protocol Litig. (Campbell v. Kasich)*, 881 F.3d 447, 449 (6th Cir. 2018) (observing that "the 'likelihood of success on the merits' factor is determinative here").

### III. PLAINTIFF'S LIKELIHOOD OF SUCCESS

To satisfy this prong, "[i]t is not enough that the chance of success on the merits be 'better than negligible.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999)). "More than a mere 'possibility' of relief is required." *Id.* The level of likelihood of success required depends on the injury at stake:

> The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiffs will suffer absent the stay. Simply stated, more of one excuses less of the other. This relationship, however, is not without its limits; the movant is always required to demonstrate more than the mere "possibility" of success on the merits. For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, "serious questions going to the merits."

*Griepentrog*, 945 F.2d at 153–54 (citations omitted).

In this case, the state trial court's finding, which was undisturbed by the Tennessee Supreme Court—that midazolam may be insufficient to block the sensation of the second and third drugs in Tennessee's protocol—establishes that the potential injury faced by the plaintiff is

- 5 -

great enough to minimize the showing he must make at this stage. Specifically, he must only demonstrate the minimum threshold of "serious questions going to the merits" of any one of his four causes of action in order to satisfy this prong.

The plaintiff asserts four causes of action in this case: (1) a Fourteenth Amendment Due Process violation in connection with the state-created liberty interests arising from the statute quoted above; (2) an as-applied challenge to the constitutionality of Tennessee's lethal injection protocol; (3) violation of the Ex Post Facto Clause of the Constitution; and (4) violation of state law.

A liberty interest protected by the Fourteenth Amendment "may arise from the Constitution itself," or "it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The court finds that there is, at a minimum, a serious question about whether Tenn. Code Ann. § 40-23-114(b) creates such an expectation or interest on behalf of death row inmates sentenced in Tennessee before 1999. The defendants argue that any interest created by the statute necessarily exists only "within the confines of and under the limitations of the applicable execution protocol" (Doc. No. 8 at 2), but they do not cite or quote any provision of the protocol that imposes any such express limitations. They argue that "the [election] form clearly announced that any change in the execution method must come 14 days or more before execution" (Doc. No. 8 at 4), but that is not what the form says. Rather, the form says that an inmate who has previously elected electrocution has until 14 days before execution to change his mind and proceed with lethal injection. (Doc. No. 1-1 at 80.) That deadline, which is logical, given the TDOC's need to procure and prepare chemicals for a lethal injection, could easily be read to have no bearing on an election to use an electric chair that is already on site at the prison. It is certainly less explicit than Tenn. Code Ann. § 40-23-

- 6 -

114(b)'s language.  The defendants also assert that the 72 hours' notice given by the plaintiff presents an "impracticable and unworkable" situation (Doc. No. 8 at 3), but they do not offer any facts or evidence supporting that assertion.

The plaintiff asserts that TDOC's regulations require prison personnel to practice the electrocution protocol monthly and that the electric chair normally sits in the execution chamber until it is removed for a lethal injection. (Doc. No. 1 at 8.)  He has replied that the TDOC maintains two qualified back-up electricians and a reserve manual transformer and that it could test the electric chair now. (Doc. No. 9 at 1.)  He also alleges—and the defendants have not disputed—that the Warden would have permitted an election as late as September 27, despite the ostensible 30-day "deadline."  All of this suggests that the amount of time the TDOC requires to comply with Tenn. Code Ann. § 40-23-114 is actually some undetermined length of time significantly less than the full 30 days it would like.  Whether the TDOC's execution protocol constitutes a regulation that could provide legitimate contours for the interest arguably created by Tenn. Code Ann. § 40-23-114(b), and, if so, what the protocol actually requires, and whether such requirements are reasonable or arbitrary are matters that are simply not amenable to development and ruling before the plaintiff's scheduled execution.  Accordingly, the plaintiff's motion must be granted in order to allow for a full and fair litigation of that claim.

Second, the Constitution prohibits states from imposing ex post facto laws. U.S. Const. art. I, § 10, cl. 1.  The Supreme Court has explained that the Ex Post Facto Clause prohibits "any statute which . . . makes more burdensome the punishment for a crime, after its commission." *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (quoting *Beazell v. Ohio* 269 U.S. 167, 169–70 (1925)).  "An ex post facto law possesses two elements: (1) 'it must apply to events occurring before its enactment,' and (2) 'it must disadvantage the offender affected by it.'" *Dyer v. Bowlen*,

465 F.3d 280, 285 (6th Cir. 2006) (quoting *Lynce v. Mathis*, 519 U.S. 433, 441 (1997)). A change in a state's method of execution is subject to that analysis. "In *Malloy v. South Carolina*, 237 U.S. 180 (1915), [the Supreme Court] concluded that a change in the method of execution was not ex post facto because evidence showed the new method to be more humane." *Weaver v. Graham*, 450 U.S. 24, 32 n. 17 (1981). There are serious questions in this case concerning whether the lethal injection protocol with which the state intends to execute the plaintiff is more or less humane than electrocution, which is his preferred method and which was the statutory method of execution at the time he was sentenced and still seems to be available to him as a matter of state law. Even assuming for the sake of the pending motion that both methods are constitutional, a court might still conclude that the 10–18 minutes of suffering occasioned by the midazolam-based lethal injection protocol increases an inmate's punishment beyond the significantly shorter duration of an electrocution. The development and resolution of those questions require the injunctive relief the plaintiff seeks.

And finally, there are serious questions going to the merits of the plaintiff's as-applied Eighth Amendment challenge to the state's lethal injection protocol. In support of that claim, he relies on facts not considered by the state court in the death row inmates' facial challenge, including evidence that the state failed to follow the protocol in the recent execution of Billy Irick and evidence that Mr. Irick demonstrated pain and suffering during his execution. The plaintiff should not be executed without having that evidence considered by at least one court.

- 8 -

Case 3:18-cv-01035 Document 10 Filed 10/11/18 Page 8 of 9 PageID #: 395

IV. CONCLUSION

For the reasons explained above, the plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction is **GRANTED**, and the defendants and anyone acting on their behalf are hereby **ENJOINED** from proceeding with the plaintiff's execution by lethal injection pending a final judgment in this case.

No bond will be required upon the issuance of this relief.

It is so **ORDERED**.

ENTER this 11th day of October 2018, at 12:00 p.m.

Aleta A. Trauger
United States District Judge